IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Raymond P. Moore

Civil Action No. 20-cv-00235-RM-MEH

THE YACHT CLUB COMMUNITY ASSOCIATION, INC.,

 Plaintiff,

v.

PELEUS INSURANCE COMPANY,

 Defendant.

_____

**ORDER**
_____

 This matter is before the Court on Magistrate Judge Hegarty's Order (the "Order" (ECF No. 63) denying Plaintiff's Motion to Strike Expert Disclosures (the "Motion") (ECF No. 39). Plaintiff filed an Objection to the Order Denying Motion to Strike Defendant's Expert Disclosures (ECF No. 68). For the reasons stated below, the Court OVERRULES Plaintiff's Objection, ADOPTS the Order, and DENIES Plaintiff's Motion to Strike Expert Disclosures.

 **I. BACKGROUND**

 Plaintiff is a community organization that is responsible for the management and maintenance of a development of townhomes in Westminster, Colorado. (ECF No. 3.) Defendant is an insurance company that issued a property insurance policy (the "Policy") to Plaintiff. The Policy was in effect from June 30, 2016, through June 30, 2017. On May 8, 2017, the Denver region, including Westminster, suffered a significant hailstorm that damaged Plaintiff's property. Plaintiff filed a claim for loss and Defendant hired an adjusting firm, Engle Martin & Associates ("Engle Martin"), and a construction consulting firm, JS Held, LLC ("JS Held"), to investigate the loss. Defendant acknowledged that Plaintiff had coverage under the Policy and made an initial payment of an undisputed amount of $609,166.97.

The third-party administrator, Strata Claims Management, Inc. ("Strata") that was handling Plaintiff's claim, informed Plaintiff that it was required to submit a sworn statement of proof of loss if Plaintiff disagreed with the undisputed amount that it had been paid. In response, Plaintiff hired a public adjuster, Impact Claim Services ("Impact"), to assist in the investigation and to assist in the preparation of the proof of loss statement. In the proof of loss statement, which it submitted on February 21, 2018, Impact told Defendant that JS Held had failed to account for a number of different covered repairs. The proof of loss identified damages that it estimated to have a replacement cost value of $6,302,048.28 and an actual cash value of $6,007,197.68.

Based on the new information it received from Impact, Defendant apparently decided it needed to conduct additional investigation into the claim. Pursuant to the Policy, in order to receive replacement cost for its losses, Plaintiff was required to complete all repair, rebuilding, or replacement within 365 days of the loss—after that point, "the value of the property will be determined at Actual Cash Value." In other words, after 365 days, Defendant would only pay a benefit after deducting for physical deterioration, depreciation, obsolescence, and depletion. According to Plaintiff, Defendant's investigation of the claim proceeded very slowly and on February 21, 2018, Impact contacted Defendant on behalf of Plaintiff to request that the replacement cost value deadline be extended for one year. This, Plaintiff contends, would have allowed Defendant to reach an accurate determination of the claim without negating the replacement cost benefit for which Plaintiff had paid. Defendant agreed to toll that period for nine (9) months, but only if Plaintiff agreed to forego any claim for interest accumulated during the tolled period, as well as any claim for any delay of payment during that period, including any statutory remedy Plaintiff would otherwise have had. Plaintiff rejected this offer and instead

filed suit on May 7, 2018 seeking declaratory relief concerning the enforceability of the replacement cost benefit provision of the Policy, as well as for money damages for unreasonable delay or denial of an insurance benefit pursuant to §§ 10-3-1115 – 1116, C.R.S. 18-cv-01076-CMA-SKC (D. Colo.).

During the pendency of that suit, Strata continued to investigate the claim on Defendant's behalf, including by having the property reinspected by Engle Martin and JS Held. On October 2, 2018, Strata informed Plaintiff that Defendant would issue an additional undisputed payment of $137,581.21 as a result of the continued investigation. Strata also told Plaintiff that it would be entitled to an additional $319,434.74, which was being held back for depreciation, after Plaintiff submitted proof that the repairs had been completed. By the date of this communication, however, the 365-day deadline had already expired.

The Parties settled the suit for declaratory relief pursuant to a confidential agreement and that suit was dismissed, effective February 21, 2019. After that suit, Plaintiff's representative, Impact, reviewed the new evaluation and again concluded that the estimate failed to account for necessary repairs and damages as well as certain terms of the Policy. In response to Impact's conclusions, Strata asked Plaintiff if it could, once again, have an inspection of the property performed. Plaintiff again agreed and asked that the new inspectors be provided with copies of the prior reports, that had been prepared by JS Held. Strata hired Nelson Forensics ("Nelson") to perform this third inspection. Nelson never received copies of any of the prior reports and evaluations. Nevertheless, Nelson completed the reinspection and created a report describing the hail damage. "However, no determinations of the repair methodology, means and methods of repair or costs of repair were provided." According to Plaintiff's Complaint, Defendant has still not made a final decision regarding the amount of loss to compensate.

Plaintiff filed this second lawsuit in December 2019 in state court, and Defendant removed the case to this Court in early 2020.  Plaintiff's suit alleges claims for breach of contract, common law bad faith breach of contract, and unreasonable delay or denial of benefits pursuant to Colorado statute. The Parties have been progressing through the litigation process and the Magistrate Judge entered a Scheduling Order which, after some amendments, set final deadlines for expert disclosures—the Order required the Parties to disclose affirmative experts by October 18, 2021, and rebuttal experts by November 8, 2021.  (ECF No. 38.)

Plaintiff served its expert disclosures on September 27, 2021.  (ECF No. 39-1.)  Defendant served no affirmative expert disclosures prior to the deadline, but on November 1, 2021, Defendant served a document entitled "Defendant's Rule 26(A)(2) Expert Disclosures." (ECF No. 39-2.)  Plaintiff then filed its Motion to Strike Defendant's Expert Disclosures, (ECF No. 39), arguing that Defendant's disclosed experts were, in fact, affirmative experts who were not disclosed by the deadline.  This Court referred the Motion to the Magistrate Judge who issued an Order denying the Motion to Strike.  (ECF No. 63.)  Plaintiff then filed this Objection to the Magistrate Judge's Order.  (ECF No. 68.)

II.     **LEGAL STANDARD**

   A. **Fed. R. Civ. P. 72(a)**

When this Court refers a pre-trial, nondispositive matter to a magistrate judge to hear, a party may file an objection in this Court within 14 days.  This Court then considers the objection and will "modify or set aside any part of the order that is clearly erroneous or is contrary to law." Fed. R. Civ. P. 72(a).  This Court is "required to 'defer to the magistrate judge's ruling unless it [was] clearly erroneous or contrary to law.'"  *Allen v. Sybase, Inc.*, 468 F.3d 642, 658 (10th Cir. 2006) (quoting *Hutchinson v. Pfeil*, 105 F.3d 562, 566 (10th Cir.1997), alterations original).

"Under the clearly erroneous standard, 'the reviewing court [must] affirm unless it "on the entire evidence is left with the definite and firm conviction that a mistake has been committed."'" *Id.* (quoting *Ocelot Oil Corp. v. Sparrow Indus.*, 847 F.2d 1458, 1464 (10th Cir.1988), alterations original).

### B. Fed. R. Civ. P. 26 and 37

Rule 26(a)(2) of the Federal Rules of Civil Procedure requires a party to disclose the identity of any expert witness it may use at trial. If an expert witness is "one retained or specially employed to provide expert testimony in the case or one whose duties as the party's employee regularly involve giving expert testimony," the disclosure of the expert's identity must be accompanied by a written report and include other information. Fed. R. Civ. P. 26(a)(2)(B). "The purpose of expert disclosures is 'to eliminate surprise and provide opposing counsel with enough information...to prepare efficiently for deposition, any pretrial motions and trial.'" *Carbaugh v. Home Depot U.S.A., Inc.*, No. 13-CV-02848-REB-MEH, 2014 WL 3543714, at *2 (D. Colo. July 16, 2014) (ellipsis in original) (quoting *Cook v. Rockwell Int'l Corp.*, 580 F. Supp. 2d 1071, 1121–22 (D. Colo. 2006)).

Under the Rule, the Court may admit testimony from a rebuttal expert if the testimony offered is ONLY intended to rebut or contradict evidence on the same matter addressed by an initial expert witness. *Spring Creek Expl. & Prod. Co., LLC v. Hess Bakken Investment II, LLC*, No. 14-cv-00134-PAB-KMT, 2016 WL 1597529 at *2 (D. Colo. Apr. 21, 2016). Thus, "'[R]ebuttal experts cannot put forth their own theories; they must restrict their testimony to attacking the theories offered by the adversary's experts.'" *Id.* at *3 (quoting *International Bus. Machs. Corp. v. Fasco Indus., Inc.*, No. C–93–20326 RPA, 1995 WL 115421, at *3 (N.D. Cal. Mar. 15, 1995), alteration original).

In contrast, "[a]ffirmative experts are those who are typically designated by the party who bears the burden of proof on an issue." *Dale v. Country Preferred Ins. Co.*, No. 19-CV-01991-PAB-SKC, 2021 WL 2529624, at *1 (D. Colo. June 21, 2021).

Where "a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence . . . unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c).

### III.  DISCUSSION

In this case, Plaintiff disclosed Derek O'Driscol, of Impact; Mike Barclay; and three corporate representatives of three general contractors pursuant to Fed. R. Civ. P. 26(a)(2)(C). (ECF No. 39-1.)  It also disclosed Greg Gerganoff; Edward Fronapfel; Howard Altschule; and Charles Miller as required by Fed. R. Civ. P. 26(a)(2)(B).  Among the topics which Plaintiff says these experts will address are:

- Protocols for forensic investigation of hail damage;
- Whether the damage to Plaintiff's property was caused by the storm on May 8, 2017;
- Industry standards for adjusting claims such as this one;
- Preparation of a Proof of Loss Presentation and the initial estimation of the costs to repair or replace the covered losses;
- Proper creation of a Request for Proposals for the scope of necessary repairs;
- Industry standards for claims handling;
- Whether Defendant complied with each of these standards;
- The scope of the necessary and covered repairs to Plaintiff's property; and

6

- Appropriate means and methods to make the repairs to Plaintiff's property and the costs to do so. (ECF No. 39-1.)

Defendant disclosed four experts of its own which it has characterized as rebuttal witnesses. (ECF. Nos. 39-2; 58.) Those experts are Todd Martin of Nelson; Tony Casella; Jeffrey Anderson of JS Held; and Russell Clark of Engle Martin. The testimony Defendant says these witnesses will provide includes opinion testimony on:

- Whether the damage to Plaintiff's property was the result of the May 8, 2017 storm;
- Defendant's investigation of the claim in this case;
- The physical condition of the roofs and other exterior components of the property; and
- The appropriate means and methods to make repairs to Plaintiff's property and the costs to do so. (ECF No. 39-2.)

Defendant also notes that each of its witnesses may "respond to any reports, opinions, conclusions, evidence, or testimony offered by Plaintiff or its designated experts concerning any of the above or related topics." (Id.)

Magistrate Judge Hegarty concluded that Defendant's disclosed experts were designated "for essentially the same topics" as Plaintiff's experts. (ECF No. 63, p.3.) He also concluded that the witnesses' reports were consistent with the designations. (Id. p.4.) The Magistrate Judge pointed out that, in an insurance case, the insured bears the burden of proving that a covered loss has occurred, while the insurer must prove that any loss falls within one of the policy's exclusions. (Id.) Thus, if Defendant's experts have been designated to show that no covered loss exists, and not to show that a loss falls within an exclusion, then that testimony

7

rebuts Plaintiff's witnesses and is not affirmative expert testimony. The Magistrate Judge noted that Plaintiff admits that Defendant's experts address the same issues as those addressed by Plaintiff's own experts, "albeit reaching different conclusions." (Id.)

Magistrate Judge Hegarty also pointed out that, contrary to Plaintiff's assertion, "[i]t makes no difference . . . that Defendant's experts began their work, reports, and analysis prior to the expert disclosures of Plaintiff." (Id.) The Court agrees with Magistrate Judge Hegarty, and further notes that Plaintiff has pointed to no precedent holding that a defendant's expert cannot serve as a rebuttal witness simply because he or she prepared a report before receiving a report from a plaintiff's expert.

Finally, Magistrate Judge Hegarty acknowledged the substantial number of affirmative defenses put forth by Defendant—by his count, twenty-nine of them. (Id. p.5.) He noted, however, that Defendant cannot use the disclosed witnesses to testify in its case-in-chief, and that their testimony must be limited to rebutting the testimony designated in the disclosure. (Id.) "It is Plaintiff's responsibility to police this limitation and object at trial at the appropriate moments if Defendant or its experts stray from the realm of suitable rebuttal expert testimony." (Id.)

Based on the above reasoning, Magistrate Judge Hegarty denied the Motion to Strike Defendant's Expert Disclosures. (Id.) Applying the deferential standard required in this circumstance, this Court cannot conclude that Magistrate Judge Hegarty's determination was clearly erroneous or contrary to law. The Order properly recites and applies the controlling precedent, and the Court will overrule the objection.

## IV.   CONCLUSION

Based on the foregoing, the Court:

(1)   OVERRULES Plaintiff's Objection to the Order (ECF No. 68);

(2)     AFFIRMS and ADOPTS the Magistrate Judge's Recommendation (ECF No. 63); and

(3)     DENIES Plaintiff's Motion to Strike Defendant's Expert Disclosures (ECF No. 39).

DATED this 29th day of July, 2022.

BY THE COURT:

_____
RAYMOND P. MOORE
United States District Judge